UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00174-LLK

SHARBAI A. WHITE                                                                     PLAINTIFF

v.

ANDREW SAUL, Commissioner of Social Security                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets # 17 and 24. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 11.)

Plaintiff alleges disability due to anxiety, panic attacks, and schizoaffective disorder. (Administrative Record (AR) at 278.) In July 2017, Plaintiff's treating psychiatrist, Louis G. Mudd, M.D., completed the standard mental assessment form, finding that Plaintiff is "extremely" and "markedly" limited in 14 of 20 functional areas. (AR at 795-96.) It is undisputed that acceptance of Dr. Mudd's findings would require an ultimate finding of "disabled." The Administrative Law Judge (ALJ) gave "no weight" to Dr. Mudd's findings, in part, because Dr. Mudd's treatment notes, which might have identified supporting clinical bases, are entirely handwritten and almost completely illegible. (AR at 44 referencing AR at 795-96, 955-80.) Plaintiff's primary argument is that the ALJ's decision to give "no weight" to Dr. Mudd's findings is not supported by substantial evidence.

Because the ALJ had no duty to contact Dr. Mudd for clarification of his illegible notes and because Plaintiff carried the ultimate burden of proving her disability claim, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

1

**A chronological history of Plaintiff's disability claim**

Plaintiff alleges that she became disabled in January 2012 due to anxiety, panic attacks, and schizoaffective disorder. (AR at 36, 278.)

Until June 2011 (approximately seven months before her alleged onset of disability date), Plaintiff held a responsible position caring for special needs adults. (AR at 79, 75-77, 371, 898.) Plaintiff gave two explanations of her alleged, relatively-rapid decline into disability between June 2011 and January 2012. First, she stated that she was raped in or around 2010, while driving home from another state. (AR at 77, 898.) Second, she stated that, after losing her job, she was unable to find another job and was forced to live with her brothers, who had drug problems and lived a "chaotic" lifestyle. (AR at 77, 371, 898.) The ALJ found that Plaintiff suffers from substance abuse disorder. (AR at 38.)

In February 2012, Plaintiff overdosed on psychotropic medication and was admitted to Bowling Green Medical Center, where she was seen by psychiatrist Louis G. Mudd. (AR at 371-72.) In March 2012, auditory hallucinations ("voices") allegedly persuaded her to overdose a second time and to set her bed on fire so she could "rest in peace." (AR at 410.) Plaintiff was seen by Dr. Mudd again and transferred for a relatively brief stay at Western State Hospital in Hopkinsville, Kentucky. (AR at 411.) Thereafter, Plaintiff received outpatient treatment at Lifeskills, Inc. (AR at 412.)

In 2012 or 2013, Plaintiff burned down her boyfriend's house and was convicted of arson. (AR at 550, 790.) She was incarcerated between June 2012 and April 2013. (*Id.*) Upon release, she reported distress at being unable to find work due to her felony record. (AR at 522-24.) In 2014 and 2015, Plaintiff's mother was able to get her some work at a cotton factory, but none of the jobs lasted long because she allegedly could not handle the stress. (AR at 70-75, 100, 279.)

In June 2015, Plaintiff filed applications for disability benefits pursuant to Titles II and XVI of the Social Security Act, alleging she became disabled in January 2012. (AR at 36, 278.) Plaintiff was last insured for Title II benefits in June 2018.

In September 2015, LifeSkills released Plaintiff as a patient due to reported improvement. (AR at 522-24.)

In November 2015, Plaintiff was examined at the request of the Commissioner by licensed clinical psychologist Emily Skaggs, Psy.D. (AR at 631-32.)

In December 2015, Plaintiff's disability claim was denied initially. (AR at 36.)

In January 2016, Plaintiff resumed treatment at LifeSkills due to a reported increase in symptoms "without any identifiable triggers." (AR at 790.) In or around January 2016, she apparently began regular treatment with Dr. Mudd, the psychiatrist who saw her after her overdoses in 2012.

In March 2016, Plaintiff disability claim was denied on reconsideration. (AR at 36.)

In May 2016, Plaintiff reported hearing "voices" that told her to jump out of a moving car and end her life because "nothing will ever change for her." (AR at 871, 877.) In September through November 2016, she sought treatment for anxiety and panic attacks from Drs. Wright and Redden. (AR at 991-93.) A LifeSkills note from December 2016 states that she "went after" her brother with a hammer. (AR at 873.) A LifeSkills note from March 2017 states that she reported visual hallucinations ("seeing men"). (AR at 905.)

In July 2017, Dr. Mudd completed the standard mental assessment form, which forms the primary basis of Plaintiff's disability claim. (AR at 795-96.)

A Lifeskills note from December 2016 indicates that medication was helping Plaintiff with her hallucinations, but she was still experiencing anxiety and panic attacks. (AR at 896.)

### Dr. Mudd's findings

As noted above, Dr. Mudd's treatment notes are entirely handwritten and almost completely illegible. (AR at 955-80.) However, Dr. Mudd's findings in the "comments" section of the standard mental assessment form he completed are mostly legible. The gist of Dr. Mudd's commentary is that it is his

3

opinion that, if Plaintiff were placed in any work environment, her symptoms would likely increase to the point of being a potential threat to herself and others:

> This varies dependent on panic attacks, getting out of house [illegible] thereby likely to be much worse in work setting, fear in part related to paranoia / voices. … Schizoaffective disorder, post-traumatic stress disorder ([illegible] sexual assault), variable symptoms based on environment (my opinion – unable to work – see below [illegible]). … Ms. White hears voices and is paranoid and fearful, she also [illegible], she isolates and avoids situations in public [illegible], symptoms are likely to exacerbate leading to unreliability and potential danger self or others.

(AR at 795-96.)

The ALJ gave "no weight" to Dr. Mudd's opinion, in part, due to the illegibility of Dr. Mudd's supporting findings:

> Her psychiatrist, Dr. Louis Mudd, endorsed extreme and marked limitations for the claimant. This is given no weight. The examination records submitted by Dr. Mudd do not support his own allegations of such limitations. It is not clear from these records that he ever provided treatment aside from merely prescribing medication and refills. There are no counseling records, no mental status examinations, and no indications whatsoever of her condition any time in his records, most of which are largely – if not completely – illegible.

(AR at 44.)

### The ALJ's decision to give Dr. Mudd's disabling findings "no weight" was supported by substantial evidence.

Plaintiff argues that the ALJ's decision to give "no weight" (AR at 44) to Dr. Mudd's disabling findings was not supported by substantial evidence. (Docket # 17 at 13-15.) An ALJ must give a treating source's medical opinion controlling weight under certain circumstances. It is undisputed that Dr. Mudd's findings of 14 "extreme" and "marked" limitations was a medical opinion from a treating source. The findings were entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [were] not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). Dr. Mudd's findings were not entitled to controlling weight because Dr. Mudd's assertion that, if Plaintiff were placed in any work environment, her symptoms would likely increase to the point of being a potential threat to herself and others was speculative and not well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4

Admittedly, Dr. Mudd's treatment notes may have contained supporting findings.  However, the notes are almost completely illegible.  Under prior legal standards, the ALJ arguably had a duty to contact Dr. Mudd for clarification.  *See* former 20 C.F.R. § 404.1512(e) (specifying circumstances in which an ALJ must contact a treating source for clarification of the bases of his/her opinions); *see also Belton v. Comm'r of Soc. Sec.*, No. CIV.A. 10-14558, 2011 WL 6000765, at *9 (E.D. Mich. Nov. 4, 2011) (report adopted, 2011 WL 6000754) ("Where the medical records are crucial to the claimant's claim, illegibility of important evidentiary material has been held to warrant a remand for further clarification and supplementation."). Effective March 26, 2012, however, 20 C.F.R. § 404.1520b replaced the former mandatory requirement, making contact optional.  *See* Section 404.1520b(b)(2) (If the evidence is inconsistent or insufficient for an ALJ to make a disability determination, the ALJ "may" recontact the medical source for clarification, but the ALJ "will determine the best way" to proceed, which may be simply to make the determination "based on the evidence we have.")

Given the lack of an affirmative duty on the part of an ALJ to contact the treating source for clarification of illegible notes, the illegibility may fairly be viewed as simply a special case of the claimant's failure to carry her burden of proof.  *See Beckstedt v. Comm'r*, No. 1:13-CV-261, 2015 WL 235193, at *10 (S.D. Ohio Jan. 16, 2015) (report adopted, 2015 WL 545157) ("The fact that a treating physician's notes may be largely illegible does not relieve plaintiff of this burden [of proving her disability claim], nor does it require the Commissioner to accept plaintiff's word in lieu of objective, clinical, or opinion evidence."); *Williams v. Comm'r*, No. 1:15CV00829, 2016 WL 1408621, at *16 (N.D. Ohio Apr. 11, 2016) (While there "may be information helpful to Plaintiff's case buried in these [illegible] notes … Plaintiff chose not to have [them] transcribed … nor did she otherwise provide assistance to the Court in deciphering or quoting these documents.  In the end, it is Plaintiff's burden of demonstrating an entitlement to disability benefits.").  Therefore, due to lack of proven (legible) clinical findings supporting Dr. Mudd's disabling findings, the ALJ was not required to give those findings controlling weight.

Additionally, the ALJ was not required to give controlling weight to Dr. Mudd's disabling findings because they were "inconsistent with the other substantial evidence in your case record." Section 404.1527(c)(2). For example, Plaintiff's allegedly "extreme" inability to interact appropriately with the general public was at odds with her attendance of church three times a week and shopping in stores twice a month. (AR at 300, 330, 796.) Other "extreme" and "marked" limitations found by Dr. Mudd were inconsistent with Plaintiff's report of getting along "good" with authority figures, following written and spoken instructions "good," being able to finish what she starts, and being able to pay attention for "1 hour straight." (AR at 301-02, 795-96.)

When (as here) the ALJ does not give controlling weight to a treating source's opinion, he is required to:

> [A]pply certain factors -- namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source -- in determining what weight to give the opinion.

*Wilson v. Comm'r*, 378 F. 3d 541, 544 (6th Cir. 2004). Even though the ALJ must articulate "good reasons," he is not required explicitly to recite these factors as long as his reasons reflect them. *Infantado v. Comm'r*, 263 F. App'x 469, 474 (6th Cir. 2008). Due to the illegibility of Dr. Mudd's notes, the ALJ was not in a position to further articulate his reasons. The ALJ's decision to give Dr. Mudd's disabling opinions "no weight" was supported by substantial evidence.

**The ALJ did not err in giving greater weight to Dr. Stodola's opinion than to Dr. Skagg's opinion.**

As noted above, in November 2015, Plaintiff was examined at the request of the Commissioner by licensed clinical psychologist Emily Skaggs, Psy.D. Dr. Skaggs found that Plaintiff is "markedly" limited in her abilities to understand, remember, and carry out simple tasks; tolerate stress and pressure of day-to-day employment; sustain attention and concentration; and respond appropriately to supervisors and coworkers. (AR at 631-32.) In March 2016, in light of Dr. Skaggs' findings and the record as a whole, the Commissioner's non-examining program psychologist, Edward Stodola, Ph.D., opined that Plaintiff is no

more than "moderately" limited in any functional area. (AR at 140-43.) The ALJ gave Dr. Skagg's opinion "little weight" and Dr. Stodola's opinion "some weight" for several reasons:

> Dr. Skaggs diagnosed [Plaintiff] with schizoaffective disorder in spite of no other provider suggesting this. She assigned the claimant a global assessment of functioning of 45 and marked limitations, inconsistent with her observations during the examination that were relatively mild in nature, as well as her past employment history and activities of daily living.

(AR at 44.) Plaintiff argues that the ALJ erred in preferring Dr. Stodola's opinion.

"Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527(c)(1). The Commissioner's non-examining program psychologists, such as Dr. Stodola, are "highly qualified … psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2. Thus, under certain circumstances, an ALJ may assign greater weight to the opinion of a program psychologist than to the opinion of an examining source. *Id.* at *3. Such circumstances include where the program psychologist's opinion "is based on a review of a complete case record," *Id.*, and where the program psychologist's opinion is "more consistent ... with the record as a whole." *Brooks v. Comm'r*, 531 F. App'x 636, 642 (6th Cir. 2013).

In this case, the case record before Dr. Stodola was at least as complete than the case record before Dr. Skaggs. The ALJ found Dr. Stodola's opinion to be more consistent with the record as a whole. (AR at 44.) Therefore, the ALJ did not err in giving greater weight to Dr. Stodola's opinion than to Dr. Skagg's opinion.

**Plaintiff failed to prove that she suffers from an impairment satisfying the Listing.**

Next, Plaintiff argues that her schizoaffective disorder, anxiety, depression, bipolar/affective disorder and/or post-traumatic stress disorder (PTSD) satisfy Listings 12.03, 12.04, 12.06 and/or 12.06. The argument presupposes that the ALJ was required to give controlling or deferential weight to the "extreme" and/or "marked" limitations found by Drs. Mudd and/or Skagg. Because this opinion has

already concluded that the ALJ properly gave "no weight" to Dr. Mudd's findings and properly gave greater weight to Dr. Stolola's opinion than to Dr. Skagg's opinion, Plaintiff's presupposition is inapplicable. Therefore, Plaintiff failed to prove that she suffers from an impairment satisfying the Listing.

**The ALJ's evaluation of Plaintiff's subjective allegations was supported by substantial evidence.**

Finally, Plaintiff argues that a remand is required because "[t]he ALJ's entire analysis of [her] complaints seems to rest of the sporadic nature of Plaintiff's treatment and her non-compliance." (Docket # 17 at 19.) "Since the ALJ failed to explore any possible reasons for this behavior, and failed to address any such reasons in his decision, his decision cannot be supported by substantial evidence." (*Id.*)

The Commissioner concedes that "the ALJ erred by not considering [Plaintiff's] inability to afford treatment" as a legitimate excuse for non-compliance. (Docket # 24 at 14). However, remand is not required because the ALJ's "entire analysis" was not based on non-compliance and sporadic treatment and, even if it was, sporadic treatment provided a substantial basis for the ALJ's analysis. In any event, the ALJ based his evaluation of Plaintiff's subjective allegations on several other factors:

> Her initial treatment coincided with her first application for benefits. … She went through periods of not hearing voices that seemed to coincide with her use of benzodiazepines and other substances. She worked as a house manager for several years working with and assisting special needs adults with mental impairments, and there is no record for this job or any other job that she was unable to perform due to a mental impairment, or that she was getting treatment for any mental impairment. … She presented at the hearing as pleasant, intelligent, and engaging. Her demeanor was appropriate and responsive, without any anxiety or depressed mood or abnormal affect.

(AR at 43.)

"No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Kornecky v. Comm'r*, 167 F. App'x 496, 507 (6th Cir. 2006). There is no reason to believe that a remand to the ALJ for consideration of potentially-valid excuses for non-compliance with treatment (i.e., lack of funds) would lead to a different result.

**Order**

Because the ALJ's decision was supported by substantial evidence and Plaintiff's arguments are unpersuasive, the final decision of the Commissioner is hereby AFFIRMED, and Plaintiff's complaint is DISMISSED.

November 25, 2019

Lanny King, Magistrate Judge
United States District Court